IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Travis McCrea, a/k/a Travis McCrae, a/k/a Travis Sintell McCrae,<br><br>Plaintiff,<br><br>vs.<br><br>Attorney Susan McGill, Sgt. N. Shelley, Sgt. E. Sieban, Cpl. Russell, Stacy Lee, Ned L. Polk, Tonya Brown, Chief Kimberly Marlow, Corporal J. Head, Florence Police Department,<br><br>Defendants. | Case No.: 4:25-cv-10476-JD-TER<br><br>**ORDER AND OPINION** |

This matter is before the Court on the Report and Recommendation ("Report") of United States Magistrate Judge Thomas E. Rogers, III, issued pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.). (DE 74.) The Report addresses Defendant Ned L. Polk's motion to dismiss (DE 41), the motion for summary judgment filed by Defendants N. Shelley, E. Sieban, Russell, and J. Head (collectively, the "Officer Defendants") (DE 54), Plaintiff's motions to amend, and the remaining pending motions.[1] Plaintiff filed consolidated objections (DE 81), the Officer Defendants filed a response (DE 84), and Plaintiff thereafter filed additional papers, including a sur-reply and requests for further relief. (DE 86; DE 87; DE 88.) The Court has reviewed the Report, the objections, the parties' dispositive-motion submissions, and the

[1] The recommendation has no presumptive weight, and the responsibility for making a final determination remains with the United States District Court. *See Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). The court is charged with making a de novo determination of those portions of the Report and Recommendation to which specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the magistrate judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

supplemental filings. Because Plaintiff proceeds *pro se*, the Court has liberally construed his submissions.

For the reasons below, the Court overrules Plaintiff's objections, adopts the Report as modified, grants the dispositive motions as to all federal claims, declines supplemental jurisdiction over the remaining state law claims, denies the motions to amend and the requests for collateral relief, and dismisses this action.

**A. Background**

The Court previously conducted an initial screening review of Plaintiff's Amended Complaint. By Order dated February 27, 2026, the Court dismissed Defendants Susan McGill, Tonya Brown, Stacy Lee, Kimberly Marlow, and the Florence Police Department with prejudice; permitted the action to proceed against the Officer Defendants on Plaintiff's excessive force allegations; and permitted Plaintiff's state law claims against Polk to proceed. (DE 61 at 2-3, 6.) The Court also denied Plaintiff's request for injunctive relief without prejudice and denied his request for disqualification or reassignment. (*Id.* at 5-6.)

The surviving federal claims arise from an investigatory stop on June 16, 2023. Sergeant Sieban states that a South Carolina Law Enforcement Division fugitive task force agent advised him that a murder suspect named Erick McCrea was driving a white taxi and was being tracked through an ankle monitor. Sieban confirmed the outstanding murder charge and demographic information, contacted the monitoring company, and received real-time location information. Officers located a white taxi at the reported location, observed that the driver matched the reported race, saw a rear window memorial bearing the surname McCrea, and observed that the driver wore an ankle monitor. (DE 54-1; DE 54-6.)

The officers conducted a high risk stop. Plaintiff complied with commands to exit and walk backward, after which Head and Russell handcuffed him and Head conducted an over-the-clothing weapons frisk. When Plaintiff's driver's license revealed a different first name and date of birth, Sieban contacted the monitoring company, which confirmed that Plaintiff's ankle monitor information had mistakenly been associated with Erick McCrea's account. The CAD record reflects that Plaintiff was secured at approximately 2:49 p.m. and released at approximately 2:53 p.m. (DE 54-1; DE 54-5; DE 54-6; DE 54-8 at 2-3.)

Plaintiff alleges that officers blocked his taxi, pointed firearms at him, forced him from the vehicle, handcuffed and searched him, and sexually assaulted him during the search. (DE 8-1 at 6-7.) In opposing summary judgment, Plaintiff principally argued that the officers had time to check the taxi's license plate, lettering, and inspection information before initiating the stop. (DE 59 at 4-8, 12.) His objections repeat that position, challenge the officers' affidavits and the use of information relayed by SLED and the monitoring company, invoke the admitted monitoring error, and raise additional theories and requests for relief. (DE 81 at 1-15.)

**B. Report and Recommendation**

The Report first summarized Plaintiff's verified allegations that Polk negligently disclosed or relayed his GPS information and that the Officer Defendants blocked his taxi, pointed a rifle at him, removed him from the vehicle, used excessive force, and sexually assaulted him. (DE 74 at 1-2.) It then summarized the Officer Defendants' evidence concerning the SLED fugitive investigation, the confirmed murder warrant and demographic information, the monitoring company's real-time location data, the officers' surveillance of the white taxi, the McCrea memorial, the high risk stop, the

over-the-clothing frisk, the license discrepancy, the monitoring company's account error, and Plaintiff's release. (*Id*. at 2-5.) The Report also noted Plaintiff's contention that the officers could have used the taxi's plate and commercial identifiers to verify his identity before the stop. (*Id*. at 5-6.)

As to Polk, the Report concluded that Plaintiff's allegations of negligence, breach of contract, and generalized privacy violations did not identify a federal right enforceable under § 1983. It, therefore, recommended granting Polk's motion to dismiss as to any federal claim. (*Id*. at 8-9.)

As to the Officer Defendants, the Report concluded that the collective information available to the officers supplied reasonable suspicion to stop the taxi and briefly detain its driver while confirming identity. It further concluded that the officers were not constitutionally required to exhaust every less intrusive verification method before making the stop and that they promptly released Plaintiff after confirming the monitoring error. (*Id*. at 9-12.) The Report also concluded that blocking the taxi, displaying weapons, ordering Plaintiff from the vehicle, handcuffing him, and performing a weapons frisk were objectively reasonable safety measures during a felony stop for a suspected murder fugitive. (*Id*. at 12-14.)

The Report stated in a footnote that Plaintiff appeared to have abandoned his sexual misconduct allegation by failing to address it in his summary judgment response and alternatively concluded that the record was insufficient to create a genuine dispute on that theory. (*Id*. at 9 n.1.) Finally, the Report recommended that the Court decline supplemental jurisdiction over the remaining state law claims, dismiss the action, deem the other pending motions moot, and treat the motions to amend as untimely under the Scheduling Order. (*Id*. at 14-15 & n.2.)

### C. Standard of Review

The Court must review de novo only those portions of the Report to which a party makes a specific objection. 28 U.S.C. § 636(b)(1). To be actionable, objections must be specific. Failure to file specific objections constitutes a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the district judge. *See United States v. Schronce*, 727 F.2d 91, 94 & n.4 (4th Cir. 1984). "The Supreme Court has expressly upheld the validity of such a waiver rule, explaining that 'the filing of objections to a magistrate's report enables the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute.'" *Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (citing *Thomas v. Arn*, 474 U.S. 140, 147 (1985)).

When no specific objection is made, the Court need not conduct de novo review and need only satisfy itself that there is no clear error on the face of the record before accepting the recommendation. *Diamond v. Colonial Life & Accident Insurance Co.*, 416 F.3d 310, 315 (4th Cir. 2005); *Camby v. Davis*, 718 F.2d 198, 199 (4th Cir. 1983).

### D. Plaintiff's Objections

The Court has reviewed de novo the principal issues identified in Plaintiff's objections: the Rule 56 record, the basis and duration of the stop, the degree of restraint and force used, the sexual misconduct allegation, qualified immunity, the asserted federal claims against Polk, supplemental jurisdiction, amendment, discovery, sanctions, and injunctive relief. Plaintiff's objections are sustained in part to the limited extent that the Report did not fully account for the evidentiary value of the verified Amended Complaint and suggested that Plaintiff had abandoned the sexual misconduct

allegation. The objections are otherwise overruled, including all objections to the recommended disposition.

### 1. The Rule 56 Record

Plaintiff first argues that the Report accepted the Officer Defendants' version of events, credited self-interested affidavits and hearsay, and disregarded his sworn allegations. (DE 81 at 2–3, 9–10.) The Court has applied the summary judgment standard required by Rule 56 and *Tolan v. Cotton*, viewing supported facts and reasonable inferences in Plaintiff's favor without weighing the evidence or making credibility determinations. *See Tolan v. Cotton*, 572 U.S. 650, 657–60 (2014).

Plaintiff is correct on one limited evidentiary point. Because the Amended Complaint includes a declaration under 28 U.S.C. § 1746, it may be considered at summary judgment to the extent it states specific facts based on Plaintiff's personal knowledge that could be presented in admissible form at trial. *See Goodman v. Diggs*, 986 F.3d 493, 498–99 (4th Cir. 2021). The Court, therefore, does not disregard the verified pleading merely because Plaintiff did not submit a separate affidavit with his summary judgment response. The Report is modified to the extent its statement that Plaintiff supplied no affidavit or other evidence could be read to exclude the evidentiary value of the verified pleading. (*See* DE 74 at 5–6.)

That correction does not change the result. Verification does not convert legal conclusions, collective accusations, or matters outside Plaintiff's personal knowledge into competent evidence. Rule 56 requires specific facts from which a reasonable jury could return a verdict against a particular defendant. Nor are the officers' declarations inadmissible merely because the declarants are interested witnesses. Rule 56(c)(4)

permits consideration of declarations based on personal knowledge that set out facts capable of admission at trial.

The CAD record and contemporaneous incident materials also corroborate the material investigative sequence and the brief period during which Plaintiff was restrained. (DE 54-7 at 1–4; DE 54-8 at 2–3.) Plaintiff has not identified a basis showing that those materials could not be presented in admissible form at trial.

The information relayed by SLED and the monitoring company is relevant principally to show what the officers were told and, therefore, what they reasonably understood when they acted. It is not offered to prove that Plaintiff actually was Erick McCrea. Used for that non-hearsay purpose, the communications may be considered in evaluating objective reasonableness. *See* Fed. R. Evid. 801(c)(2). Plaintiff's general disagreement with the officers' account does not identify contrary competent evidence creating a genuine dispute concerning the material chronology.

**2. The Investigatory Stop, Frisk, and Degree of Restraint**

Plaintiff objects that the monitoring company's admitted error, the officers' period of surveillance, and the availability of a license-plate query or other identifying information made the stop unreasonable and created jury questions. (DE 81 at 3–4, 10–11.) The objection is overruled.

The Fourth Amendment permits a brief investigatory detention when officers possess a particularized and objective basis to suspect criminal activity. *See Terry v. Ohio*, 392 U.S. 1, 21–22 (1968). Officers may rely on information communicated by other law enforcement personnel, including a wanted-person bulletin or similar communication supported by articulable facts. *See United States v. Hensley*, 469 U.S.

221, 231–33 (1985); *see also United States v. McRae*, 336 F. App'x 301, 305 (4th Cir. 2009).

Here, the officers possessed a combination of particularized facts: an identified murder suspect named Erick McCrea; a confirmed outstanding murder warrant and demographic information; a report that the suspect drove a white taxi and wore an ankle monitor; real-time location data leading directly to the taxi; a driver matching the reported race; an ankle monitor; and a McCrea memorial on the vehicle. (DE 54-1 ¶¶ 3–7; DE 54-4 ¶¶ 3–5; DE 54-6 ¶¶ 3–7.) Considered collectively, those circumstances supplied substantially more than an unparticularized hunch. The later discovery that the monitoring company had associated Plaintiff's device with the wrong account does not retroactively make the officers' reliance on the information unreasonable. The Fourth Amendment permits an objectively reasonable mistake of identity. *See Hill v. California*, 401 U.S. 797, 802–04 (1971).

Plaintiff's proposed plate or taxi record inquiries might have been additional investigative options, but the Fourth Amendment does not require officers to exhaust every potentially "less intrusive means" before conducting a stop supported by reasonable suspicion. *United States v. Sokolow*, 490 U.S. 1, 11 (1989). A registration query also would not necessarily have established the identity of the vehicle's current driver.

The justification for the frisk is analytically distinct from the justification for the stop. A protective frisk is permissible when officers reasonably believe that the person detained may be armed and dangerous. *See Terry*, 392 U.S. at 24, 27; *see also United States v. Hernandez-Mendez*, 626 F.3d 203, 211–12 (4th Cir. 2010). The officers reasonably believed they were confronting a person wanted for murder. That

information supplied an objective safety basis for an over-the-clothing weapons frisk while they confirmed the driver's identity.

The use of a vehicle block, displayed firearms, commands, and handcuffs did not necessarily convert the encounter into an arrest. Officers conducting an investigatory stop may employ reasonable safety measures, including firearms and handcuffs, when the circumstances suggest a substantial danger. *See United States v. Elston*, 479 F.3d 314, 320 (4th Cir. 2007); *see also United States v. Leshuk*, 65 F.3d 1105, 1109–10 (4th Cir. 1995). The suspected offense here was murder, and the officers reasonably believed the stopped driver was the wanted fugitive. The degree of restraint was closely tied to that perceived danger and was brief.

Even assuming that the restraint amounted to an arrest rather than a *Terry* detention, the result would not change. The officers had confirmed the existence of a murder warrant for Erick McCrea and reasonably, though mistakenly, believed Plaintiff was that person. *See Hill*, 401 U.S. at 802–04.

Once the officers obtained Plaintiff's license and observed the discrepancy, Sieban contacted the monitoring company, confirmed the account error, and the officers removed the handcuffs. The CAD record reflects approximately four minutes between the entry showing Plaintiff secured and the entry showing him released. (DE 54-8 at 2–3.) That interval reflects the approximate period of restraint after Plaintiff was secured. No reasonable jury could find that the officers lacked a lawful basis to stop and secure Plaintiff or that they continued the detention beyond the time reasonably necessary to resolve the identity discrepancy.

The monitoring company's error may bear on Plaintiff's state law negligence, contract, or privacy theories, which the Court does not decide. But negligence by a third

party does not establish that the officers violated the Fourth Amendment by acting on the combined information reasonably available to them.

**3. The Force Used During the Stop**

Plaintiff separately contends that blocking the taxi, pointing firearms, issuing commands, handcuffing him, and searching him constituted extreme or deadly force, particularly because he complied and was not the wanted suspect. He also relies on *Barnes v. Felix,* 605 U.S. 73 (2025) and *Tennessee v. Garner*, 471 U.S. 1, 11 (1985). (DE 81 at 3–4, 11–12.)

Force employed during a stop or arrest is governed by the Fourth Amendment's objective-reasonableness standard. *See Graham v. Connor*, 490 U.S. 386, 396–97 (1989). The Court considers the totality of the circumstances, including the severity of the suspected crime, the apparent threat to officers or others, resistance or flight, the duration of the force, and the relationship between the need for force and the force used. Plaintiff's compliance is relevant, but the inquiry remains based on the facts reasonably perceived at the time, not solely on the later discovery that Plaintiff was not the wanted person.

*Barnes* rejected a rule that isolates only the final moment when force is deployed. It requires consideration of all relevant events leading to that moment and recognizes that earlier circumstances may favor either party. *See Barnes v. Felix*, 605 U.S. 73, 80–84 (2025). The Court has, therefore, considered the full sequence, including the officers' surveillance and available verification options, the murder warrant and tracking information, the felony-stop tactics, Plaintiff's compliance, the immediate identity check, and the prompt de-escalation after the mistake was discovered.

*Barnes* requires consideration of relevant events preceding the force, but it does not establish that an earlier investigative choice or mistake, standing alone, renders the subsequent use of force unreasonable. It also expressly left unresolved the separate question whether and how an officer's creation of a dangerous situation affects the constitutional analysis. *Id.* at 84.

Plaintiff's reliance on *Garner* does not change the result. No firearm was discharged, and no deadly force was applied. The display of firearms is nevertheless part of the force evaluated under *Graham*. The suspected offense was murder, and the officers reasonably believed they were confronting the wanted fugitive. In those circumstances, temporarily blocking the taxi, displaying firearms at the outset, directing the driver to exit, applying handcuffs, and conducting a weapons frisk were proportionate measures to secure the scene while identity was checked. (DE 54-5 ¶¶ 5–7; DE 54-6 ¶¶ 5, 7–10.)

The justification for force also was not permitted to persist after the perceived danger dissipated. *See Harris v. Pittman*, 927 F.3d 266, 273–80 (4th Cir. 2019). The record reflects that the officers removed the restraints promptly after the monitoring company confirmed the error.

The verified pleading and Plaintiff's summary judgment response identify no blow, takedown, firearm discharge, taser use, prolonged handcuffing, or continuation of force after the account error was confirmed. Plaintiff's claimed fear, humiliation, anxiety, sleep disturbance, and other psychological injuries are serious allegations of damages, but injury alone does not establish that the temporary measures employed during the felony stop were objectively unreasonable. On the supported record, no

reasonable jury could find that the force used to secure Plaintiff while the officers confirmed his identity violated the Fourth Amendment.

**4. The Sexual Misconduct Allegation**

Plaintiff specifically objects to the Report's suggestion that he abandoned the sexual misconduct allegation. (DE 81 at 4, 12.) The Court sustains the objection to that limited extent and does not deem the allegation abandoned merely because Plaintiff did not separately address it in his summary judgment response.

Plaintiff's verified pleading states that he was subjected to "sexual assault by officers," but it does not identify the allegedly improper contact, state whether any contact occurred over or under clothing, describe its duration or manner, or provide facts distinguishing sexually abusive conduct from the over-the-clothing weapons frisk described in the summary judgment record. (DE 8-1 at 7.) Defendants specifically moved for summary judgment on the allegation and identified Head as the officer who performed the frisk. (DE 54 at 10–11; DE 54-6 ¶ 8.) Plaintiff's response did not address that showing. (DE 59 at 1–12.)

The objections attach a 2023 demand letter captioned as an "Affidavit" that more specifically alleges that an unidentified officer "groped" Plaintiff's genitals. (DE 81 at 20–21.) The Court has considered the attachment, but it is not sworn, notarized, or executed under penalty of perjury. It, therefore, does not constitute an affidavit or declaration under Rule 56(c)(4) or 28 U.S.C. § 1746.

Even assuming Head performed the challenged frisk, the verified pleading provides no specific factual description from which a reasonable jury could determine that Head exceeded the permissible scope of an over-the-clothing weapons frisk or conducted it in a sexually abusive manner. The conclusory characterization "sexual

assault," without supporting facts describing what occurred, does not create a genuine dispute under Rule 56.

The Court, therefore, does not rely on abandonment, and its ruling does not depend on treating the body camera recordings as conclusively resolving the issue. Summary judgment is appropriate because Plaintiff has not produced competent, specific evidence from which a reasonable jury could find that a named Officer Defendant conducted the otherwise justified weapons frisk in an objectively unreasonable or sexually abusive manner. The Report is adopted on this claim as modified by this analysis.

**5. Qualified Immunity and the Remaining Federal Theories**

Plaintiff objects to qualified immunity and raises municipal liability, failure-to-train, racial profiling, equal protection, due process, retaliation, conspiracy, and related theories. (DE 81 at 4–5, 12–15.) The Report resolved the claims against the Officer Defendants on the merits. Because the record does not establish a constitutional violation, the Court need not reach the clearly-established-law prong of qualified immunity. Plaintiff's objection concerning qualified immunity, therefore, does not alter the disposition.

The additional federal theories likewise provide no basis for relief. They were not pleaded as claims against the Officer Defendants in the operative complaint; the only municipal defendant was dismissed by DE 61; and Plaintiff identifies no competent evidence of a municipal policy, custom, discriminatory intent, agreement, or retaliatory act. A party may not avoid summary judgment by asserting new claims for the first time in objections or collateral motions rather than through the operative pleading.

Plaintiff's references to state criminal statutes governing the presentation of firearms, professional conduct rules, federal consumer statutes, federal acquisition regulations, historical materials, and federal Indian-law provisions do not create a private federal cause of action on the facts presented. (DE 81 at 6–8, 13–15, 22–26.) His allegations concerning prior counsel, media actors, risk-management personnel, and dismissed defendants fall outside the surviving claims and do not identify error in the Report.

Nor has Plaintiff established a basis for sanctions or a finding of attorney misconduct. He identifies no specific representation that lacked evidentiary support after a reasonable inquiry, no violation of a discovery or other court order, and no competent evidence of spoliation, concealment, or bad-faith litigation conduct. Disagreement with defense counsel's characterization of the record is insufficient.

**E. Claims Against Defendant Polk**

Plaintiff objects to dismissal of the federal claims against Polk and seeks discovery concerning whether Polk or the monitoring company became a willful participant in state action. He also invokes negligence, privacy, contract, and data-handling theories. (DE 81 at 5, 13–14.) The objection is overruled.

The operative pleading describes Polk as a private bail bondsman and alleges that he negligently relayed or disclosed GPS information that contributed to the mistaken identification. Section 1983 requires both the deprivation of a federal right and conduct under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988). A private person does not become a state actor merely by supplying information to law enforcement. The plaintiff must allege facts showing joint participation, coercion,

delegation of governmental authority, or conduct otherwise fairly attributable to the State. *See DeBauche v. Trani*, 191 F.3d 499, 506–08 (4th Cir. 1999).

Plaintiff alleges no nonconclusory facts showing that Polk jointly planned the stop, directed the officers, exercised governmental authority, knowingly fabricated information, or entered an agreement with law enforcement to deprive Plaintiff of a federal right. This is not a case in which a bondsman and an officer jointly exercised coercive authority in carrying out an apprehension. *Cf. Jackson v. Pantazes*, 810 F.2d 426, 429–30 (4th Cir. 1987). A conditional request for discovery to determine whether joint action might exist does not substitute for factual allegations plausibly supporting state action.

Negligence does not amount to a deprivation of due process. *See Daniels v. Williams*, 474 U.S. 327, 328 (1986). Plaintiff's alleged contract breach likewise identifies no independent federal right. To the extent Plaintiff invokes the Privacy Act, 5 U.S.C. § 552a, that statute regulates federal agencies and does not create a claim against a private bondsman, a municipal police department, or local officers on the allegations presented.

Accordingly, to the extent any federal claim remains against Polk, his motion to dismiss is granted. The Court expresses no view on the merits of Plaintiff's state-law negligence, contract, or privacy theories.

**F. Supplemental Jurisdiction**

Plaintiff asks the Court to retain the state law claims or, alternatively, dismiss them without prejudice. (DE 81 at 8, 15.) After dismissing all claims over which it has original jurisdiction, the Court may decline to exercise supplemental jurisdiction. 28 U.S.C. § 1367(c)(3).

This action remains at the pretrial stage. Once the federal claims are removed, the remaining claims turn on South Carolina negligence, contract, privacy, and related state law principles. Considerations of judicial economy, convenience, fairness, and comity favor allowing South Carolina courts to address those questions. The Court, therefore, declines supplemental jurisdiction and follows Plaintiff's alternative request by dismissing the remaining state law claims without prejudice.

**G. Motions to Amend, Discovery, and Other Pending Filings**

**1. Motions to Amend or Supplement**

The Court modifies the Report by addressing Plaintiff's principal motions to amend or supplement the operative pleading rather than treating every pending request as moot. The Scheduling Order established December 1, 2025, as the deadline to amend pleadings and December 29, 2025, as the discovery deadline. (DE 28.) Plaintiff filed DE 49 and DE 50 on December 23, 2025, DE 53 on January 27, 2026, and DE 70 on April 27, 2026.

Once the scheduling order deadline has expired, the movant must satisfy Rule 16(b)(4)'s good-cause standard before the Court applies Rule 15's more liberal standards for amendment or supplementation. *See Nourison Rug Corp. v. Parvizian*, 535 F.3d 295, 298–99 (4th Cir. 2008). The principal consideration under Rule 16 is the movant's diligence.

Plaintiff has not shown good cause. The proposed filings do not identify a material fact that could not reasonably have been pleaded before the deadline, adequately explain when Plaintiff learned the proposed facts, or demonstrate diligence in seeking amendment. DE 49 and DE 50 were filed after the amendment deadline; DE 53 was filed after both the amendment and discovery deadlines; and DE 70 was filed months

after discovery closed and after summary judgment had been fully briefed. Allowing a substantially revised pleading at that stage would require reopening discovery, adding or reintroducing parties, and restarting dispositive motion practice.

DE 50 does not alter that conclusion. Although Plaintiff states generally that the filing arises from Defendants' discovery responses, he does not identify a particular response, state when he received it, or explain what previously unavailable fact it revealed. Instead, DE 50 seeks to add claims or theories for risk management negligence, Indigenous discrimination, and violations of unspecified treaty obligations, together with new damages and requests for declaratory and injunctive relief. (DE 50 at 1–6.) It alleges that municipal risk management actors failed to investigate and remediate the incident and asserts in general terms that Defendants engaged in selective enforcement, racialized misidentification, and targeted enforcement.

Those assertions do not establish diligence or provide a sufficient basis for expanding the action. The proposed discrimination theory identifies no specific facts showing discriminatory intent or differential treatment. The proposed treaty theory identifies no particular treaty provision or individually enforceable right applicable to these Defendants. The risk management allegations principally assert a new state law negligence theory concerning post-incident investigation, preservation, and remediation. Permitting those theories would materially broaden the action beyond the claims litigated through discovery and dispositive motion briefing. The requested specification of damages does not cure those deficiencies or create an independent basis for relief. DE 50's requests for declaratory and injunctive relief likewise rest on the newly asserted theories and allegations of possible future targeting rather than specific facts showing an ongoing or imminent violation.

Even if Plaintiff could satisfy Rule 16, leave would be denied under Rule 15 because of undue delay, prejudice, disruption of the case schedule, and, as to several proposed federal theories, futility. DE 70 does not clearly preserve the surviving claims against the Officer Defendants and Polk; attempts to add Tonya Brown after she was dismissed with prejudice by DE 61; seeks to add WPDE NewsChannel 15 and unidentified corporate actors; and introduces allegations concerning a forced entry into a residence, chemical agents, and a media publication that are not part of the June 16, 2023, taxi stop. (DE 70 at 1–4.)

Those proposed claims do not arise from the same transaction or occurrence as the claims litigated in this action and would substantially expand and confuse the case. *See* Fed. R. Civ. P. 20(a)(2). Although misjoinder alone is not a ground for dismissing an action, see Fed. R. Civ. P. 21, the attempt to inject unrelated parties and events at this stage confirms the undue delay, prejudice, and case-management disruption that amendment would cause.

Nor does DE 70 identify substantially different evidence, a change in controlling law, or clear error causing manifest injustice that would justify revising DE 61 under Rule 54(b). *See Carlson v. Boston Scientific Corp.*, 856 F.3d 320, 325–26 (4th Cir. 2017).

Accordingly, DE 49, DE 50, DE 53, and DE 70 are **DENIED** to the extent they seek leave to amend or supplement the operative pleading.

**2. Discovery and Supplementation of the Record**

Plaintiff also seeks additional discovery, supplementation of the record, and relief from summary judgment on the ground that discovery was incomplete. (DE 69; DE 76; DE 77; DE 81 at 8, 15; DE 86; DE 87; DE 88.) The Officer Defendants state that the body camera recordings, dispatch audio, and responsive materials were produced during

discovery. (DE 65 at 4.) Plaintiff did not file a timely motion to compel identifying a particular deficient response.

Although Rule 56(d) ordinarily contemplates an affidavit or declaration, technical compliance is not invariably required when a *pro se* nonmovant adequately informs the Court that summary judgment is premature and identifies discovery necessary to oppose the motion. *See Goodman*, 986 F.3d at 500–01. The Court, therefore, does not deny relief merely because Plaintiff failed to submit a formally completed Rule 56(d) declaration.

Even liberally construed, however, Plaintiff's filings do not make the required substantive showing. They do not identify particular outstanding discovery, explain what material facts the requested discovery would reveal, show how those facts would create a genuine dispute concerning an issue material to summary judgment, or demonstrate diligent efforts to obtain the information during the discovery period. The template included with DE 59 requested unspecified future citations and discovery rather than identifying facts essential to oppose summary judgment. Plaintiff, therefore, has not shown that additional discovery or supplementation is warranted.

**3. Injunctive Relief, Preservation, and Sanctions**

Plaintiff's later filings also seek preservation orders, emergency protective relief, and sanctions. The submissions provide no specific evidence of a presently impending threat, retaliation by a named Defendant, witness intimidation, spoliation, violation of a discovery order, or sanctionable representation or litigation conduct.

A preliminary injunction is an extraordinary remedy. Plaintiff must make a clear showing that he is likely to succeed on the merits, likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities favors relief, and that an

injunction is in the public interest. *See Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008). Plaintiff has not made the required showing of likely success or a presently threatened irreparable injury attributable to a named Defendant.

Accordingly, DE 69, DE 76, and DE 77 are denied to the extent they seek affirmative relief; DE 66 is denied as moot; and, to the extent DE 78, DE 86, DE 87, or DE 88 request additional relief, those requests are denied. All other pending motions and requests not expressly resolved above are denied as moot.

**H. Conclusion**

After a thorough review of the Report, the record, Plaintiff's specific objections and supplemental filings, and the applicable law, the Court adopts the Report as modified herein.

**IT IS, THEREFORE, ORDERED** that Plaintiff's objections (DE 81) are **SUSTAINED IN PART** to the limited extent that the Report did not fully account for the evidentiary value of Plaintiff's verified Amended Complaint and suggested that Plaintiff had abandoned the sexual misconduct allegation. The objections are otherwise **OVERRULED**, including all objections to the recommended disposition. The Report and Recommendation (DE 74) is **ADOPTED AS MODIFIED**.

**IT IS FURTHER ORDERED** that Defendant Ned L. Polk's Motion to Dismiss (DE 41) is **GRANTED** to the extent any federal claim remains against him, and any such federal claim is **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that the Motion for Summary Judgment filed by Defendants N. Shelley, E. Sieban, Russell, and J. Head (DE 54) is **GRANTED** as to all federal claims asserted against them, and judgment shall be entered in their favor on those claims.

**IT IS FURTHER ORDERED** that the Court **DECLINES** to exercise supplemental jurisdiction over Plaintiff's remaining state law claims, and those claims are **DISMISSED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that Plaintiff's motions to amend or supplement the operative pleading (DE 49, DE 50, DE 53, and DE 70) are **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Verified Adverse Action filing (DE 69), Verified Affidavit and Emergency Motion (DE 76), and Emergency Motion for Protective Relief and Sanctions (DE 77) are **DENIED** to the extent they seek affirmative relief. Defendant Polk's Motion for Extension of Time (DE 66) is **DENIED AS MOOT**. To the extent DE 78, DE 86, DE 87, or DE 88 seek affirmative relief, those requests are **DENIED**. All other pending motions and requests not expressly resolved in this Order are **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment consistent with this Order and **CLOSE** the case.

**IT IS SO ORDERED.**

Joseph Dawson, III
Joseph Dawson, III
United States District Judge

Florence, South Carolina
August 14, 2026

**NOTICE OF RIGHT TO APPEAL**

The parties are hereby notified of the right to appeal this Order and the accompanying judgment within thirty (30) days from entry of judgment under Rules 3 and 4 of the Federal Rules of Appellate Procedure.